UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 5:25-cv-02490-AB-AJR | Date: | September 29, 2025 |
|---|---|---|---|

| Title: | *Miguel Santiago Flores v. Kristi Noem, et. al.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DKT. NO. 4]**

On September 23, 2025 Petitioner Miguel Santiago Flores ("Petitioner") filed an *Ex Parte* Application For Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("TRO Appl.," Dkt. No. 4). Respondents Secretary for the Department of Homeland Security Kristi Noem, Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Todd Lyons, Attorney General Pam Bondi, Acting Director of the Los Angeles ICE Field Office Ernesto Santacruz, Jr., and Warden Fereti Semaia (collectively, "Respondents") filed an Opposition on September 24, 2025 ("Opp'n," Dkt. No. 5). For the reasons set forth below, Petitioner's TRO Application is **GRANTED**.

## I. BACKGROUND

Petitioner initiated this action through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ("Habeas Pet.," Dkt. No. 1). Petitioner is a Mexican citizen that entered the United States as a minor and has been living in the United States since June 1997. (TRO Appl. 2). He is a resident of Riverside, California and is married with three children, all of whom are U.S. citizens. (*Id*. at 2). Petitioner has been detained since June 11, 2025 in Adelanto, California pending removal proceedings. (*Id.* at 3).

Petitioner is charged with having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at 2). On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a precedent decision in *Matter of Yajure Hurtado* finding that non-citizens, like Petitioner, who entered the United States without inspection are classified as "applicants for admission." 29 I&N Dec.216 (BIA 2025). These noncitizens are now ineligible for bond redetermination hearings pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.*

Petitioner argues the precedent decision in *Matter of Yajure Hurtado* is contrary to the applicable statutory text in 8 U.S.C. §§ 1225 and 1226 as well as decades of agency practice. (TRO Appl. 2). Petitioner alleges that his ongoing detention without a bond hearing deprives him of statutory and constitutional rights. *Id.* Accordingly, Petitioner has filed the present TRO Application to be provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a). *Id.*

In deciding this case, this Court becomes one of many district courts to consider the issues raised by Petitioner in his TRO Application. *See, e.g., Benitez v. Noem*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Arrazola Gonzalez v. Noem*, 5:25-cv-01789-ODW-DFM (C.D. Cal. Aug. 15, 2025); *Vasquez Garcia v, Noem*, 3:25-cv-02180-DMS-MMP (S.D. Cal. Sept. 3, 2025). This Court now joins those which have previously reviewed this issue and **GRANTS** Petitioner's TRO Application.

## II. LEGAL STANDARD

To obtain a TRO, Petitioner must show (1) that he is likely to succeed on the merits of his claims, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Stromans, Inc. v. Selecky*, 586 F.3d 1109, 1127

(9th Cir. 2009).

A TRO is a kind of ex parte application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D.Cal. 1995) (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency).

### III. DISCUSSION

Petitioner argues his continued detention by ICE without a bond hearing is a violation of his statutory right to a bond hearing under 8 U.S.C. § 1226(a), the Administrative Procedures Act ("APA"), the Fifth Amendment to the U.S. Constitution's right to due process. (Habeas Pet. ¶¶ 37-46). Respondents contend this Court does not have jurisdiction over the matter and should dismiss the case. (Opp'n 5-9). Alternatively, should the Court find jurisdiction, Respondents argue that Petitioner's TRO Application fails on the merits. (*Id.* at 9-14). The Court reviews the jurisdictional argument first before assessing the substantive merit of Petitioner's TRO Application.

### A. The Court has jurisdiction to review Petitioner's Application.

Respondents argue 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g) strip this Court of jurisdiction. (*Id.* at 5-9). This Court finds the Respondents' position inconsistent with the plain text of the statutes and appliable case law.

### i. Jurisdiction under 8 U.S.C. § 1252(b)(9).

Respondents submit this Court does not have jurisdiction as 8 U.S.C. § 1252 (b)(9) divests district courts of jurisdiction to review direct and indirect challenges to removal orders, including Petitioner's action. (*Id.*) Under 8 U.S.C. § 1252(b)(9):

> (b) With respect to *review of an order of removal under subsection (a)(1)*. . . (9) Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in

judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252 (b)(9) (emphasis added). Respondents claim that Petitioner's action challenges the government's decision to detain him, which arises from the government's decision to commence removal proceedings. Thus, this action would only be reviewable by final removal action, per 8 U.S.C. § 1252(a)(5). (Opp'n 6-9). The Court disagrees with Respondents' position.

First, Respondents reading of the "arises from" language is overly broad and inconsistent with precedent. The Supreme Court in *Jennings v. Rodriguez* rejected an expansive reading of the "arising from" language, finding that it would be extreme and contrary to prior decisions. 583 U.S. 281, 293 (2018) (noting that requiring a final removal order to review *Bivens* claims or state-law claims for assault only because such actions would not have occurred but for a removal action does not mean those actions are "arising from" a removal action). An expansive reading of "arising from," akin to the Respondents' interpretation, could result in cases where a detainee would be deprived "of any meaningful change for judicial review." *Id*.

Additionally, the *Jennings* Court determined 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to review when a party "[is] not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 294. While Respondents argue Petitioner is challenging the government's decision to detain him in the first place, this argument mischaracterizes the Petitioner's position. Petitioner is not challenging the decision to detain or to seek removal; rather, Petitioner challenges the government's decision to deny him a bond hearing pursuant to 8 U.S.C. § 1226(a). To find that 8 U.S.C. § 1252(b)(9) bars jurisdiction in this case would be an expansive reading of the phrase "arising from" could produce the "absurd" results the *Jennings* Court warned against. *Id.* at 293 (stating that "cramming judicial review" of issues, such as *Bivens* claims or state-law claims for assault, into review of final removal orders would be "absurd").

This Court finds 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to review of Petitioner's TRO Application.

### ii. Jurisdiction under 8 U.S.C. § 1252(g).

Respondents claim that 8 U.S.C. § 1252(g) bars this Court from reviewing Petitioner's TRO Application. (Opp'n 5-6). Again, Respondents argument fails in light of the *Jennings v. Rodriguez*. 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The *Jennings* Court held that § 1252(g) is a narrow provision, limited only the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." *Jennings*, 583 U.S. at 293. As with § 1252(b)(9), Respondents' claim that Petitioner's detention "arises from the decision to commence such proceedings against them" fails for the same reasons articulated in the section above. *See* Opp'n 5-6.

Respondents rely on an overly broad interpretation of the phrase "arising from" that is contrary to precedent set in *Jennings*. Petitioner's TRO Application does not arise from a decision or action to commence proceedings; rather, it arises from the decision to classify Petitioner as an "applicant for admission," thereby denying Petitioner a bond hearing. In reviewing 8 U.S.C. § 1252(g), the *Jennings* Court emphasized that it would not "interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings*, 583 U.S. at 293. Instead, this provision would be limited to "just those three specific actions themselves." *Id.* Accordingly, since the Petitioner's action does not arise from a decision to commence proceedings, adjudicate cases, or execute removal orders, this Court finds that § 1252(g) is not a jurisdictional bar to review of the TRO Application.

**B. The Petitioner has proven his burden under the standard for a TRO.**

The Court, having established no jurisdictional bar, will assess the merits of the Petitioner's TRO Application.

**i. Likelihood of Success on the Merits**

Petitioner argues that, per the plain text of the statute and the controlling case law, 8 U.S.C. § 1226(a) applies to noncitizens currently in the United States, like the Petitioner. Accordingly, Petitioner argues he would be entitled to the bond hearing guaranteed by § 1226(a). (TRO Appl. 4-5).

Section 1226 expressly concerns the "apprehension and detention" of noncitizens and establishes two different processes for noncitizens. 8 U.S.C. § 1226. Section 1226(a) sets forth a general provision governing the arrest, detention, and release of noncitizens in the United States pending a removal decision. 8 U.S.C. § 1226(a). By contrast, § 1226(c) articulates the specific process applicable to the detention of "criminal aliens," as defined by § 1226(c)(1). 8 U.S.C. § 1226(c).

Notably, the procedures governing release vary for an individual detained under § 1226(a) versus § 1226(c). Release under § 1226(a) confers an "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022). Conversely, release under § 1226(c) is subject to a higher threshold determination by the Attorney General. 8 U.S.C. § 1226(c) (stating that the Attorney General may release a "criminal alien" only if the Attorney General decides that release is necessary pursuant to specified objectives).

Respondents argue that the provision applicable to the Petitioner is not § 1226(a), but § 1225(b)(2). Under Respondents' theory, Petitioner would be classified as an "applicant for admission" subject to the provisions of § 1225(b)(2). (Opp'n 9-11). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Applicants for admission are subject to mandatory detention under § 1225(b)(2) if the noncitizen is "not clearly and

beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Respondents argue that this provision is applicable to both those individuals currently in the United States and those who arrive in the United States.

The Respondent's theory, however, misinterprets the plain text of the statute. If individuals presently in the United States without inspection or admission are "applicants for admission" subject to mandatory detention, there would be no reason for § 1226 to except another group, or "criminal aliens" under § 1226(c)(1), to mandatory detention. The Respondents argue that this is an "irreconcilable conflict in two legal provisions," where the specific, or 8 U.S.C. § 1225, should govern over the general, or 8 U.S.C. § 1226. (Opp'n 9-10). This interpretation, however, manufactures an "irreconcilable conflict" where previously none existed.

This Court finds that there is no conflict between these provisions because § 1226 and § 1225 apply to two separate groups of individuals. Section 1225 applies to "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,'" and applies at "the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 582 U.S. at 287-88. Conversely, § 1226 applies to noncitizens currently residing in the country but that "do not have an absolute right to remain here." *Id.* at 288-289. These noncitizens may fall into either the general provisions of § 1226(a) or the "criminal alien" category of § 1226(c). *Id.*

The framework and relationship between § 1226 and § 1225 present no irreconcilable conflict. While Respondents attempt to create a conflict between these two provisions, the Respondents position conflicts with the "basic interpretive cannon that 'a statute should be construed [to give effect] to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corely v. United States*, 556 U.S. 303, 314 (2009). In taking Respondents position, this Court would render portions of the statute inoperative. Consistent with this interpretive cannon and prior case law, this Court finds that § 1226 and § 1225 apply to two different groups of individuals: those already residing in the country and those attempting to enter the country, respectively.

Adopting this position, this Court finds that the Petitioner is likely to succeed on the merits of his claim, as he belongs to the class of individuals covered under § 1226.

### ii. Irreparable Harm

In order to obtain a TRO, a Petitioner must demonstrate he is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Petitioner has been detained by ICE without a bond hearing since June 11, 2025. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that the "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Ninth Circuit has further recognized the irreparable harms suffered by those in ICE detention, including "subpar medical and psychiatric care. . . economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Petitioner's continued detention in ICE custody without a bond hearing constitutes an irreparable harm. This Court finds the second TRO factor is satisfied.

### iii. Balance of the Equities and Public Interest

The last two TRO factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court finds that both the balance of the equities and the public interest weigh heavily in favor of the Petitioner.

As noted above, it is likely that Petitioner's continued detention pursuant to § 1225 and denial of a bond hearing under the new DHS policy constitutes a violation of federal law. Violations of federal law are neither equitable nor in the public's interest. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

The government argues that it has a compelling interest in the "steady enforcement of immigration laws" and that a TRO would "disrupt the status quo." (Opp'n 13-14). While the Court agrees that there is a compelling interest in the enforcement of immigration laws, this is not so compelling as to permit the Respondents to violate the Petitioner's statutory rights. The Court is also not

persuaded by Respondent's argument that issuing a TRO would disrupt the status quo. As Respondent's position is inconsistent with controlling case law and prior practice, the Court does not find that any possible disruption to the "status quo" is sufficiently compelling to override Petitioner's interest.

Accordingly, this Court finds that the final two TRO factors weigh in favor of the Petitioner.

## IV. CONCLUSION

For the reasons stated above, this Court finds the Petitioner has met his burden for a TRO. The Court **GRANTS** Petitioner's Application for a TRO. **IT IS FURTHER ORDERED** that:

1. Respondents must provide Petitioner an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) by Monday, October 6, 2025.

2. Petitioner and Respondents must provide the Court a status report on the individualized bond hearing by 12:00 pm PST Tuesday, October 7, 2025.

3. Respondents are further ordered to show cause, in person, on why a preliminary injunction should not issue at 9:00 am PST on October 8, 2025.

4. This Order shall be in effect for a period 14 days from entry hereof, after which it shall expire absent further order of the Court.

5. Respondents are enjoined from transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court and pending final resolution of this litigation.